UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SONIA M.,

                     Plaintiff,                          **DECISION AND ORDER**

             v.                                          6:20-CV-06870 EAW

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____


## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Sonia M. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 10; Dkt. 11), and Plaintiff's reply (Dkt 13). For the reasons discussed below, Plaintiff's motion (Dkt. 10) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 11) is denied.

**BACKGROUND**

Plaintiff protectively filed her application for SSI on July 5, 2016. (Dkt. 9 at 19, 194-99).[1] In her application, Plaintiff alleged disability beginning May 1, 2007. (*Id.* at 19, 194). Plaintiff's application was initially denied on September 27, 2016. (*Id.* at 19, 77-88). A hearing was held before administrative law judge ("ALJ") Brian Kane on June 13, 2019, in Rochester, New York. (*Id*. at 19, 33-66). On September 16, 2019, the ALJ issued an unfavorable decision. (*Id.* at 19-28). Plaintiff requested Appeals Council review; her request was denied on September 15, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

**LEGAL STANDARD**

I.     **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since July 5, 2016, the application date. (Dkt. 9 at 21).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: major depressive disorder and anxiety disorder. (*Id.*).

- 4 -

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 12.04 and 12.06 in reaching his conclusion. (*Id.* at 21-23).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the nonexertional limitation that she can frequently interact with coworkers and the general public. (*Id.* at 23).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 26). The ALJ further relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of laundry sorter and garment sorter. (*Id.* at 27). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II.   **Remand of this Matter for Further Proceedings is Necessary**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ failed: (1) to adequately evaluate opinion evidence in formulating her RFC, and (2) to properly account for her functional limitations in the RFC. As further explained below, the Court agrees that remand for further proceedings is necessary.

### A.   **Evaluation of Medical Opinion Evidence**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly

- 5 -

correspond with any of the opinions of medical sources cited in [her] decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted).

Similarly, the ALJ may not "cherry pick" evidence.  *Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558(DJS), 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." (citation omitted)); *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant.") (citing *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015)).  "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Younes v. Colvin*, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record.  Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]"  20 C.F.R. § 416.927(c)(2).  Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). An ALJ's failure to explicitly apply the requisite factors is a "procedural error."  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted).  However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed."  *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the]

treating source's medical opinion."  20 C.F.R. § 416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)).  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

"Unlike a treating source, a 'nontreating source' is defined as a 'physician, psychologist, or other acceptable medical source who has examined [the plaintiff] but does not have, or did not have, an ongoing treatment relationship with [the plaintiff].'" *Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 283 (S.D.N.Y. 2019) (quoting *Calixte v. Colvin*, 14-CV-5654 (MKB), 2016 WL 1306533, at *24 (E.D.N.Y. Mar. 31, 2016)).  "The ALJ is required to articulate consideration of the same factors for evaluating opinions from non-treating medical sources as those for assessing treating sources; the only exception in which the ALJ is 'not required to articulate how [he or she] considered evidence' is from nonmedical sources." *Erin B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-248 (CFH), 2022 WL 2355429, at *8 (N.D.N.Y. June 30, 2022) (quotation and citation omitted); *Brittani P. v. Comm'r of Soc. Sec.*, No. 1:20-CV-775 (JLS), 2022 WL 1645811, at *3 (W.D.N.Y. May 24, 2022) ("For medical opinions of consultants or non-treating sources, 20 C.F.R. § 416.927(c)(3) provides that 'because non[-]examining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their

medical opinions.'" (quoting *Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 16 n.4 (2d Cir. 2018))).

Finally, for mental health impairments—which are at issue in this case—the opinions offered by treating providers are "all the more important," given those impairments are "not susceptible to clear records such as x-rays or MRIs," and "depend almost exclusively on less discretely measurable factors, like what the patient says in consultations." *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018); *see also Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (explaining that "the treating physician rule is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time" (quotations and citation omitted)).

### B.      Assessment of Dr. Ransom's Opinions and Formulation of RFC

Here, Christine Ransom, Ph.D., conducted a consultative psychiatric examination of Plaintiff on September 21, 2016.  (Dkt. 9 at 327-30).  The examination report prepared by Dr. Ransom notes that Plaintiff was in school through the tenth grade in regular education and currently resides with her one-year-old daughter.  (*Id.* at 327).  She noted that Plaintiff was currently receiving counseling for depression and taking sertraline daily. (*Id.*).  Dr. Ransom indicated that Plaintiff reported having depression from being a victim of domestic violence in the past and anxiety because the perpetrator was recently released from jail, but she indicated that she is able to carry on with her life and do the things she needs to do around the house to take care of her daughter.  (*Id.*).  The report further indicates that Plaintiff can dress, bathe, and groom herself, and cook, clean, do her own laundry, and manage money.  (*Id.* at 329).  Dr. Ransom recommended that Plaintiff continue treatment

with further medication management for depression and anxiety and opined that her

prognosis is fair to good with continued treatment.  (*Id.* at 330).  Specifically, Dr. Ransom

opined that Plaintiff:

> will have mild difficulty following and understanding simple directions and
> instructions, perform simple tasks independently, maintain attention and
> concentration for simple tasks, maintain a simple regular schedule and learn
> simple new tasks, performing complex tasks, relating adequately with others
> and appropriately dealing with stress.  Areas of difficulty are secondary to
> social phobia, currently mild; posttraumatic stress disorder, currently mild
> major depressive disorder, currently mild.  The results of the evaluation
> appear to be consistent with mild psychiatric conditions, which will not
> significantly interfere with [Plaintiff's] ability to function on a daily basis.

(*Id.* at 329).

> The ALJ described Dr. Ransom's examination and opinion as follows:

> [I]n September 2016, [Plaintiff] presented to Christine Ransom, Ph.D., for a
> consultative psychiatric evaluation at the behest of the Administration (Ex.
> 2F).  With respect to her current functioning, [Plaintiff] indicated that she felt
> depressed and anxious, but was "able to carry on with her life" and "can do
> all the things that she needs to do," although she limited exposure to public
> settings as much as she could.  She denied generalized anxiety, current panic
> attacks, mania, disordered thought, and cognitive deficits.  During the mental
> status examination, she was mildly dysphoric, and mildly tense, but all other
> findings were normal, including appearance, attention, concentration,
> memory, cognitive functioning, and insight.  Dr. Ransom opined that
> [Plaintiff] would have no more than mild difficulty in any aspect of work
> activity.  This opinion is accorded significant weight as it comports with both
> the mental status examination and [Plaintiff's] admitted daily activities,
> although I have found her to be more limited in social interaction.

(*Id.* at 25).

Plaintiff argues that the ALJ erred by giving significant weight to Dr. Ransom's

opinion but failing to include in the RFC the limitations identified by Dr. Ransom relating

to following and understanding simple directions and instructions, performing tasks

independently, maintaining attention and concentration for simple tasks, maintaining a

simple regular schedule and learning simple new tasks, performing complex tasks and appropriately dealing with stress.

The Commissioner argues that "in limiting Plaintiff to unskilled work, the ALJ accounted for the opined mild limitations." (Dkt. 11-1). Had the RFC limited Plaintiff to unskilled work, the Court would agree that such a limitation may have adequately addressed the portions of Dr. Ransom's opinions given significant weight. *See Tatelman v. Colvin*, 296 F. Supp. 3d 608, 613 (W.D.N.Y. 2017) ("[I]t is well-settled that a limitation to unskilled work, such as the hospital cleaner, office helper, and lens inserter positions identified by the VE as suitable for someone with plaintiff's RFC, sufficiently accounts for limitations relating to stress and production pace."); *Shawn V. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0997 (WBC), 2021 WL 3022295, at *4 (W.D.N.Y. July 16, 2021) ("The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work.") (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)); *Gossom v. Comm'r of Soc. Sec.*, No. 1:18-CV-0140, 2019 WL 2514850, at *6 (W.D.N.Y. June 18, 2019) (holding that because a restriction to unskilled work can accommodate any mild limitations that Plaintiff has, "any error in failing to specifically assess mild and moderate limitations in Plaintiff's ability to deal with stress, maintain attention and concentration and learn new tasks, was harmless"); *Guzman v. Berryhill*, No. 15 CV 3920 (VB)(LMS), 2018 WL 3387319, at *17 (S.D.N.Y. June 12, 2018) ("Consultative psychologist, Dr. Damari, characterized Plaintiff's limitations as mild to moderate, which would not preclude Plaintiff from performing unskilled work."), *report and recommendation adopted*, No. 15 CV 3920 (VB), 2018 WL

3384444 (S.D.N.Y. July 11, 2018); *Abar v. Colvin*, 7:15-CV-0095(GTS/WBC), 2016 WL 1298135, at *5 n.8 (N.D.N.Y. 2016) ("[W]hen medical evidence demonstrates that a claimant can engage in simple routine tasks or unskilled work despite limitations in . . . pace, limiting a plaintiff to only unskilled work sufficiently accounts for such limitations"). It is conceivable that the ALJ intended to include, or believed he had included, such a limitation.  (Dkt. 9 at 26) ("On the whole, the claimant can meet the demands of the unskilled jobs listed below.").[2]  But here, it is clear that the RFC contains no such limitation for unskilled work—instead, the ALJ concluded that Plaintiff is a capable of a full range of work at all exertional levels with the only limitations included being those relating to Plaintiff's ability to interact with coworkers and the general public.  (Dkt. 9 at 23).

While "[t]he failure to include mental limitations in an RFC after finding that the plaintiff has such limitations can too be harmless 'if (1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, and the challenged hypothetical is limited to include only unskilled work; or (2) the hypothetical otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace,'" *Marc G. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1032 (CFH), 2022 WL 675701, at *15 (N.D.N.Y. Mar. 7, 2022) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014)), this was not the case here

---

[2]      Similarly, while the ALJ states in the decision, "[t]here is no evidence of any kind of sustained distractibility or cognitive dysfunction that would support an erosion for time off-task or simple work, but the nature of our analysis is confined to her ability to perform simple work regardless, which she can," a limitation to simple work is not contained in the RFC or as explained below, was not included in the hypotheticals to the VE.

and the ALJ did not so limit his hypothetical to the VE.[3]  *Cf. Berst v. Comm'r of Soc. Sec.*, No. 1:17-CV-00387 EAW, 2018 WL 3637463, at *6 (W.D.N.Y. July 31, 2018) (finding failure to include mental limitations in RFC was harmless where hypothetical to vocational expert included limitation to unskilled work).

Similarly, the fact that the positions identified by the VE as jobs existing in significant numbers in the national economy that Plaintiff could perform were unskilled positions could conceivably render the error harmless.  But because the ALJ's decision seems to be internally inconsistent—by simultaneously suggesting that he is limiting Plaintiff to unskilled jobs but then not including any such unskilled work limitation in the RFC finding or hypothetical to the VE—the Court is left unable to ascertain whether his determination is in fact supported by substantial evidence.  In other words, while the ALJ could have justifiably found that a limitation to unskilled work was sufficient to account for the limitations identified by Dr. Ransom, because of the internal inconsistency, it is not at all clear that this is what he actually concluded.  As a result, the Court is unable to meaningfully review the basis for the ALJ's findings.  *Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 237 (W.D.N.Y. 2019) ("[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and

---

[3]    Specifically, the ALJ asked the VE, "[i]f I have an individual who can perform work at any exertional level, but can only frequently interact with coworkers and general public, is any of the past work available?" (Dkt. 9 at 47).  In deciding that Plaintiff did not have past relevant work, the ALJ then asked, "are there other jobs that someone could do with that level of limitation?" to which the VE identified the laundry sorter and garment sorter positions.  (*Id.*).

meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered."). For all of these reasons, the ALJ's error here cannot be considered harmless.

Accordingly, because the ALJ gave significant weight to Dr. Ransom's opinions on Plaintiff's mental limitations yet failed to include them in the RFC or in the hypothetical to the VE or otherwise explain why he did not do so, the Court concludes that remand is warranted. *See Marc G.*, 2022 WL 675701, at *15 ("The Court cannot conclude that the ALJ's hypothetical and RFC determination are supported by substantial evidence where he did not include, or explain the exclusion of, mental health or unskilled work limitations after finding that plaintiff was mildly limited in every mental health category.").

C.   **Remaining Argument**

As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this argument. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4,

2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 26, 2022
Rochester, New York